## Case No. 1,815.

### BRATTLE v. WILLARD.

[Smith (N. H.) 374.]

Circuit Court, D. New Hampshire. May Term, 1798.

EXECUTORS AND ADMINISTRATORS—COLLECTION OF JUDGMENT AGAINST ESTATE — LIABILITY OF ADMINISTRATOR.

Scire facias against an administrator, suggesting waste. Plea that the defendant has fully administered the personal estate, and that he had tendered to the officer lands of the deceased, more than sufficient, in value, to satisfy the plaintiff's execution. A demurrer to this plea was sustained by a divided court.

At law. This was a scire facias. It recited the judgment obtained by the plaintiff [Thomas Brattle], as executor [of W. Brattle], against the estate of the defendant's testator; the suing out of execution; the marshal's return of nulla bona. It then suggested waste by administrator, and concluded with a prayer for execution against the administrator de bonis propriis. The defendant [Josiah Willard, administrator of the estate of Josiah Willard not administered by Solomon Willard, executor cum testamento annexo] pleaded that he had fully administered the personal estate, and that he tendered lands of the deceased more than sufficient in value to satisfy the plaintiff's execution to the marshal, who refused to levy upon them. To this plea, there was a general demurrer and joinder. [Demurrer sustained.]

Argument for defendant, Nov. Term, 1797:

The facts disclosed in the plea, and admitted by the demurrer, are sufficient to bar the plaintiff of his execution de bonis propriis. Defendant has done everything required of him as administrator, "having exposed the estate to the creditor, to take his satisfaction thereof" ([Act Feb. 3, 1789,] Laws [N. H.] Ed. 1797, 250); or, in other words, he has not been guilty of waste, and consequently is not liable to execution against his own goods and estate.

It is clear that the goods and estate of the administrator are only liable to execution for the debts of the intestate upon a suggestion of waste, and this suggestion must be proved. The facts stated in the plea disprove the suggestion in this case. The estate is the debtor, and not the administrator; and the estate is the fund out of which satisfaction is to be had for the debts due from the intestate. It is the duty of the administrator to collect the debts due to the estate, and to preserve and safely keep the estate committed to his charge for the purpose of paying the debts. The surplus belongs to the heirs at law. He is only a trustee for the creditors, and answerable only for neglect of duty or breach of trust. He must collect debts. If he does not, they will be lost; for no other person, not even a creditor, can collect them. Therefore, neglect or refusal to sue for a separate debt is waste. If any of the chattels should be lost or damaged for want of safe-keeping, this is waste. The law gives the administrator the custody of all the chattels, and it must intend that they be safely kept. If they are injured, he has his remedy against the wrong-doer, and a neglect to pursue, under a reasonable prospect of success, would also be waste; the damages, when recovered, are assets.

In the present case, it is stated, in the plea, that the personal estate has been duly administered; and this fact is not denied; it is admitted by the demurrer. As to the personal estate, then, there is no waste; and the office of administrator, as it respects this estate, according to the English law, would now cease. Plene administravit is a bar till new assets be shown. The administrator, in that country, has nothing to do with real estate. In this state, the law is different. The personal estate stands chargeable with the payment of the debts and funeral charges of the deceased; and, where the personal estate is insufficient for that purpose, the real estate shall supply the deficiency.

It is admitted that there may be waste in relation to real estate. The administrator may suffer it to be sold for taxes, or may neglect to redeem it when sold. He may, when duly licensed, sell it, and neglect to apply the proceeds to the payment of debts. In the latter case, however, it would be a waste of personal estate. If real estate had been sold, and the money applied to the private use of the administrator in the present case, or if real estate had been sold and the administrator had neglected to collect the money arising from the sale, in either case, the allegation in the plea, that the personal estate was fully administered, would not have been true, and might have been traversed. If, through the neglect of the administrator, the real estate was lost, and sufficient should not remain for the payment of debts, then the fact stated in the plea, of the tender of real estate belonging to the deceased, amounting in value to $——, might have been traversed.

As the pleadings stand, it is admitted that the personal estate is fully administered, and the real estate of the deceased, sufficient to satisfy the plaintiff's demand, is offered by the administrator. Why, then, charge the administrator with the payment of plaintiff's debts out of his own estate? If he is chargeable, it must be on this ground, that it was his duty to cause the real estate to be sold, and the proceeds applied to the payment of debts. But no such duty is imposed upon him by law, and he cannot surely be deemed guilty of a neglect of duty for not performing what he is not bound to perform. The statute (Ed. 1797, p. 250) expressly declares "that every administrator shall make payment of debts of the intestate in specie, if such he hath, as assets, in his hands." This clearly implies that, in case

he have not specie, he is not bound to pay in specie, but may give to the creditors that which he has received. The duty of a trustee extends no farther. The law, in some cases, gives him the power to turn the estate into specie; but it in no case enjoins it upon him as a duty, and it does not result from the nature of the office or trust.

Will it be pretended that he is bound to turn the chattels into specie? It is declared in the statute (Ed. 1797, p. 255), that the administrator shall not be bound to account for the appraised value of the personal estate, if he produce the chattels themselves. If the administrator were to expose the personal estate to the creditor, nulla bona would be a false return. He (the creditor) could not maintain a suit for execution de bonis propriis. And why? Because the administrator is not bound to turn the personal estate into specie.

According to the laws of this state, nulla bona is a false return. We use the term in the sense it is used in the civil law, from whence it is borrowed. Nulla bona, in England, means no estate on which a fieri facias can be levied, which is the execution which issues against administrators. Nulla bona, in this state, must mean no estate on which the execution in the officer's hand can be levied. But our executions are against the lands, as well as the chattels, of the deceased.

It may be said that the law implies that it is the duty of the administrator to convert the real estate into specie for the payment of the debts. By the act of Feb. 15, 1791 ([Laws N. H.] Ed. 1797, 254), it is enacted "that, when the personal estate of any person deceased shall not be sufficient to answer the just debts which the deceased owed, the judge of probate is empowered to license and authorize the administrators of such estate to sell so much of the real estate of the deceased as will satisfy the just debts which the deceased owed at the time of his death," &c.; and for that purpose the administrator is enabled to make a valid conveyance. This may be done. But does the law make it the duty of the administrator to apply for license? It does not, but leaves it to his discretion whether to apply or not; and, if he does apply, it is, after all, referred to the discretion of the judge, whether he shall have that permission without which he cannot sell. It is certainly laying down a position too broad to say that the administrator is bound to sell. At most he can only be bound in duty to endeavor to sell. But it is nowhere said he shall apply. From whence it is inferable that the law has referred it to his own discretion whether to apply or not. What strengthens the construction contended for is, that, in the case of personal estate, the judge is empowered to license the sale thereof on the application of the administrator, and yet his neglect to apply for license is not considered as a neglect of duty, and subjects him to no disability whatever.

He administers it according to law when he keeps it safely, and exposes it to the creditors when called for on execution. The clause of the statute, on page 250, Ed. 1797, which relates to this subject, has been noticed. But it is proper to recur to it again. After the clause which has been quoted,— "That every administrator shall make payment of the debts of the intestate in specie, if such he hath, as assets, in his hands,"—it is added, "and, if he hath not the same, he shall expose the estate to the creditor, to take his satisfaction thereof at his election," the execution to be levied and satisfied as in other cases. It may be urged that this will be injurious to such of the creditors as may be compelled to levy on lands. But it is to be remembered that this can only happen when specie and personal estate prove insufficient; and certainly it is no greater hardship to be obliged to take the land of a dead debtor than of a living one. Most creditors, in the latter case, think the dead land better than the living body. A satisfaction by a levy on lands, in contemplation of law, is as perfect and complete, and as advantageous for the creditor, as a satisfaction in money, and much more valuable than the imprisonment of the debtor's body. Besides, if the creditor can compel the administrator to sell the lands, that he may receive the specie, he has an alternative which the administrator has not. He can take the land, and, thus put it out of the power of the administrator to pay in specie.

Upon the whole, the counsel flattered themselves that they had satisfied the court that the plea was good, and that the demurrer must be overruled; that the doctrine which must be contended for by the counsel on the other side was not founded on any clause of any positive statute; that it did not result from the nature of the administrator's office; that, having administered the estate of his testator according to law, he was not chargeable, in his own person or estate, with the debts of the deceased.

Argument for plaintiff.

It is agreed that, in order to support the demurrer, it is necessary to show that it was in this case the duty of the administrator to apply to the judge of probate for license to sell the real estate, and, having obtained leave, actually to sell, and apply the proceeds to the payment of debts due from the estate; that this, and this only, was administering the real estate according to law, where debts were due, and the personal estate insufficient; and that the neglect of doing this was, in law, denominated waste. If the plaintiff fails in this, he fails in his suit.

The term "waste" is used in a very comprehensive sense. To one unacquainted with the legal import of the term, it would seem absurd to say that an administrator had wasted an estate, merely because he had neglected to collect the debts; but a neglect

to collect a separate debt would be a neglect of duty, and therefore legal waste. The word is, in fact, in its technical signification, synonymous with neglect of duty. It is readily admitted that a scire facias, to have execution against an administrator de bonis propriis, will not lie where the administrator has complied with the duties of his office, and administered the estate according to law. But, admitting all the facts stated in the plea, it does not appear that he has so done; or, rather, it appeared that he has not administered at all on a considerable portion of the estate of his testator; namely, lands to the amount of $———.

The defendant's plea is not plene administravit; for it admits that there is yet estate enough in the possession of the administrator to pay the debts, or at least the present debt. It goes on the ground that the plaintiff is compellable to take lands in satisfaction of his debt, or suffer it to remain forever unpaid. The plea is not a temporary, but a perpetual, bar.

The counsel trusted he could maintain, to the satisfaction of the court, that it is the duty of an administrator to sell real estate for the payment of debts, when the personal estate proves insufficient for that purpose.

1. It will not be denied that it is the duty of the debtor to pay his debts according to his contracts, and that he can discharge himself of them in no other way (without the consent of the creditors) than by payment, or offer of payment, in specie. He cannot compel the creditor to receive lands, or any thing else, in satisfaction. Now all the duties and obligations of the deceased debtor descend, and rest upon his administrator, as far as the estate extends. He represents the intestate, and it is his duty to do that with the estate which the deceased debtor was, in his lifetime, bound to do; namely, if he had not specie, to procure it, and pay his debts.[1] The administrator with assets is as much bound to pay, and in the same way, that is, according to the contract, as his intestate. He is bound to pay before suit brought; and, to enable him to do so, the law has indulged him with time. To neglect to pay till costs had accumulated would, in many cases, be waste. To compel men to fulfil their contracts, or to punish them for their neglect, the law permits the body of the debtor to be taken in execution. But this is no valuable execution. The only valuable and adequate satisfaction is payment in specie. Has it not always been considered as a violation of contracts, and an impairing of their obligation, to exempt the body from imprisonment, and leave the creditor to his remedy against the goods and lands of his

debtor? And yet the doctrine contended for on the other side amounts to this. Was it ever conceived that a contract lost any of its force by the death of either of the contriving parties? That kind of satisfaction which is obtained by levying on lands was devised for the benefit of creditors. It by no means impairs the right of the creditor to demand, or the obligation of the debtor to pay, specie.

2. In the case of insolvent estates, the real, as well as personal, estate is sold and turned into specie for the payment of the debts, and pursuant to the law which has been quoted (page 254). If an estate be rendered insolvent, the administrator is bound to turn everything into specie, and pay the debts in specie. What reason can be given why this should be the case where the assets fall short of the debts, and not the case where they are precisely equal or exceed? If the estate be rendered insolvent and prove solvent, the creditors receive payment in specie. Why should the insolvency make any difference? The business of the administrator, in both cases, is to pay the debts; and the rights of the creditors, in both cases, are the same. It would be better for the creditors to receive seventy-five per cent. in specie, than one hundred per cent. in land. The words which have been cited from the statute (page 250), and relied on by the other side, are capable of a very different construction. The meaning is this: If the administrator had specie, it shall be his duty immediately to employ it in the payment of debts. If he have no specie, and the creditors come to him with executions, he shall expose the estate to the officer, to take satisfaction thereof at the election of the creditor; that is, to take it or such part of it as he may choose, or to omit taking it and give the administrator a reasonable time to convert it into specie. It cannot be doubted but that the administrator shall have a reasonable time for the performance of his duty. It is easy to conceive of, and to state, many cases where it would be adjudged that the creditor should not have execution de bonis propriis against the administrator, upon the return of nulla bona by the officer,—such as these: If the administrator had not had sufficient time to sell the real estate, and this may often happen with administrator de bonis non; if he had applied to the judge for leave, and had been refused license to sell. In these cases, no negligence or fault could be imputed to him. But no excuse of this sort is stated in the plea, and it is presumed the facts would not warrant it, otherwise they would have been insisted on.

3. A third argument in favor of the doctrine that the administrator is bound to sell the real estate, and pay the debts in specie, may be drawn from the law which empowers the judge of probate to license the sale, and enables the administrator to make a valid conveyance. Why was this provision made, and why the power given, if it were

---

[1] See 2 Bl. [Comm.] 511. Whatever estate of the deceased comes to the hands of the executor or administrator, that is of a salable nature and may be converted into ready money, is called assets; and these assets he may convert into ready money to pay debts, &c.

not the duty of those concerned to use it? If it be useful in one case, it must be so in all. It is true there are no words in the act, declaring that administrator should, at all events, sell. It was not thought necessary. The duty resulted from the nature of the office. All that was necessary was to give them the means of discharging their duties. To say that he may sell, and pay some of the creditors in specie, and that he is not bound to do so to all, is saying that the law allows him to be partial, and to discriminate between those whose claims are equal. It is giving a trustee for all the creditors the power of saying to one man, "You shall be paid in specie;" and to another, "If you will not take wild lands lying in the extreme parts of the state in satisfaction of your claim, you shall be paid nothing." It is, in short, giving him a kind of discretion in a case where there can be no occasion for exercising it beneficially, and where there is the strongest temptation to abuse it.

This doctrine, that administrators have nothing to do with real estate, is not only repugnant to the fundamental duty of the office,—the administration of the assets for the payment of debts; an active, not passive, administration, suffering the creditors to carve for themselves,—but it is as mischievous to the heirs as it is injurious to the creditors. Upon the principles of our law, the heirs can only claim the portion of estate which remains after the debts are paid. They never can, with any degree of certainty, know what is their own until this lien be removed. For, though a division of the real estate may take place upon the giving of bonds to refund when debts appear, yet, as long as the debts remain unpaid, the land of any one or more of the heirs is liable to be taken in execution by the creditors. It is, therefore, for the benefit of the heirs that the administrator should, as soon as possible, pay the debts.[2]

---

[2] The doctrine that creditors have a lien on the real estate of their deceased debtor, and may levy at any time they please, is, if true, very prejudicial to the heirs, and by no means necessary for their security, if the decision in this case be considered as fixing the law on this point. The administrator is liable to pay specie in consideration of real assets. This is all the creditors can reasonably demand. If he (the administrator) sells the land for the payment of debts, the heirs cannot complain; for they are entitled only to that which remains after the debts are paid.

Allowing the creditors to levy on real estate when there are personal assets affects the rights of the persons interested in the estate. Let us state a case. A. dies leaving a widow and two children. The estate consists of $3,000 real, and $3,000 personal, estate, and he owes $3,000. The law has destined the personal estate to pay the debts, and then the real descends thus: The widow will have one-third for life, and the reversion, and the other two-thirds will descend equally to the children. But, if the creditors take the real estate for the debts, then the personal estate will be equally divided between the widow and children.

4. But, if it should be admitted that, by the true construction of the statutes for the settlement of estates, it is manifestly the intention of the legislature that a tender of real estate, in such a case, bars the creditor of all right to demand specie, the statute, as far as relates to this provision, is void; the legislature, by the constitution of the United States, being expressly prohibited from passing such an act. In the tenth section of the first article, it is declared "that no state shall make anything but gold and silver coin a tender in payment of debts, or pass any ex post facto law, or law impairing the obligation of contracts." If the law, therefore, be as contended for, that the administrator may tender real estate in discharge of the plaintiff's debt, it is a nullity; the legislature having no authority to pass such an act.

The foregoing was the substance of the arguments used by the counsel for the parties.

THE COURT were divided in opinion.

PICKERING, District Judge, held the plea a good bar, and CUSHING, Circuit Justice, the contrary. They gave their reasons at length; in substance using the same arguments as the counsel had used.

The cause was, of course, continued till May term, 1798; when it was again argued, by Mr. Livermore, for the defendant, and Mr. Parsons, for the plaintiff.

THE COURT, consisting of Circuit Justice ELLSWORTH and the District Judge, were divided in opinion, Judge PICKERING adhering to the opinion he gave before, and the Circuit Justice agreeing in opinion with the former circuit judge. Judgment according to law was given in favor of the demurrer, and the plaintiff, accordingly, had his execution against the administrator de bonis propriis. See New Hampshire Strafford Bank v. Mellen, Smith (N. H.) 385.

NOTE [from original report]. I did not hear the last argument, but was informed that it did not differ materially from the former, and that Circuit Justice ELLSWORTH delivered his opinion in a very masterly manner, and much to the satisfaction of those who heard him. Exeter, 10 Nov., 1789. J. S.